Carla G. McClurg, CSB# 227738
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
620 SW Main Street, Room 213
Portland, OR 97205
Tel: (503) 326-7659
Email: carla.mcclurg@usdoj.gov

Attorney for Gail Brehm Geiger, Acting United States Trustee for Region 18, Plaintiff

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Cheryl Kae Stites,<br><br>Debtor. | Case No. 14-35071-rld7 |
| United States Trustee,<br><br>Plaintiff,<br><br>   v.<br><br>Vincent Howard,<br>Howard Law, P.C.,<br>Erik Graeff,<br>Law Offices of Erik Graeff, P.C.,<br><br>Defendants. | Adversary No. 16-____-rld<br><br>UNITED STATES TRUSTEE'S COMPLAINT FOR REFUND OF FEES, INJUNCTIVE RELIEF, CIVIL PENALTIES, AND OTHER SANCTIONS |

Plaintiff Acting United States Trustee for Region 18, Gail Brehm Geiger, respectfully alleges:

1.  This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding relates to the chapter 7 bankruptcy case of *In re Cheryl Kae Stites*, Case No. 14-35071-rld7, pending in the U.S. Bankruptcy Court for the

District of Oregon, Portland Division.  The matter in controversy arises under 11 U.S.C. §§ 105, 329, and 526 and the court's inherent authority.  It is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. § 1409.

2. The plaintiff is authorized to file this complaint pursuant to 11 U.S.C. §§ 307 and 526(c)(5).

3. Debtor Cheryl Kae Stites ("Stites") is a resident of Portland, Oregon and has resided in Oregon at all times pertinent to this complaint.

4. Stites is an assisted person as defined by 11 U.S.C. § 101(3).

5. Defendant Vincent Howard ("Howard") is an attorney who has been licensed to practice law in the State of California since 2004.  Howard is not authorized to practice law in the State of Oregon and is not admitted to practice in the District Court for the District of Oregon.

6. Defendant Howard Law P.C. ("Howard Law") is an active California corporation.  Howard Law's principal place of business is located in Anaheim, California.

7. Articles of incorporation for Howard Law were filed on or about July 21, 2011 with the California Secretary of State.

8. Howard has been the only shareholder of Howard Law since it was formed.

9. Starting sometime in or before 2007, Howard was a partner in and/or did business as Howard Nassiri, a Limited Liability Partnership ("Howard Nassiri LLP").

10. Based on information and belief, the law firm operating under the name Howard Nassiri LLP was succeeded by Howard Nassiri, P.C., which filed articles of incorporation with the California Secretary of State on May 5, 2009.  (Howard Nassiri LLP and Howard Nassiri, P.C. are hereinafter collectively referred to as "Howard Nassiri").  Howard was listed as the agent for service of process for Howard Nassiri, P.C.

11. Howard Nassiri, P.C. was dissolved in or about 2011.

12. Howard Law assumed responsibility for Howard Nassiri's clients after it

dissolved.

13. Howard, Howard Law, and Howard Nassiri were debt relief agencies as defined in 11 U.S.C. § 101(12A) at all times pertinent to this complaint.

14. Howard and Howard Law, in its own capacity and as successor to Howard Nassiri, provided bankruptcy assistance to Stites.

15. Erik Graeff ("Graeff") is an attorney licensed to practice law in Oregon, Washington, and California. Graeff has been licensed to practice law in California since December 1, 2009; in Oregon since May 17, 2010; and in Washington since October 29, 2014.

16. On or about December 8, 2010, articles of incorporation were filed with the Oregon Secretary of State for the Law Offices of Erik Graeff, P.C. ("Graeff Law"). Graeff is the president and registered agent of Graeff Law.

17. Graeff Law's principal place of business is located in Portland, Oregon.

18. Graeff and Graeff Law were debt relief agencies as defined by 11 U.S.C. § 101(12A) at all times pertinent to this complaint.

19. Graeff and Graeff Law provided bankruptcy assistance to Stites.

**The Relationship between the Defendants**

20. Graeff signed a Local Counsel Engagement Letter with Howard Nassiri on or about October 29, 2010.

21. The Local Counsel Engagement Letter stated that Howard Nassiri was a "national law firm based in Southern California that provide[d], *inter alia*, debt settlement and bankruptcy services to near-bankrupt or bankruptcy consumers." The Local Counsel Engagement Letter further explained that Howard Nassiri "provide[d] legal advice and representation on the debt problems of individuals from across the United States."

22. The Local Counsel Engagement Letter provided that Howard Nassiri would:

    a. "[C]ollect the funds from the client and place them in trust . . . [and] [w]hen the trust account reaches an appropriate level, we then send offers to the client's creditors;"

and

      b. Be "responsible for and oversee all negotiations and payments."

23. The Local Counsel Engagement Letter further stated that "[i]f law firm clients are unable to complete a debt settlement program, they may opt, if qualified, to file for protection under the Bankruptcy Code."

24. The purpose of the Local Counsel Engagement Letter was to confirm Howard Nassiri's engagement of Graeff to act as local counsel in Oregon "to perform whatever legal services are necessary for [Howard Nassiri]'s clients that We cannot provide in your jurisdiction because We are not licensed there."

25. Howard signed an Amendment to the Local Counsel Engagement Agreement (the "Amended Engagement Agreement") on or about August 23, 2011 in which Howard Law agreed to take over the rights and responsibilities of Howard Nassiri under the Local Counsel Engagement Letter. Graeff indicated his approval of Howard Law taking over the rights and responsibilities of Howard Nassiri when he signed the Amended Engagement Agreement on August 23, 2011.

26. At all times pertinent to this complaint, Howard Law and Howard Nassiri used the services of Morgan Drexen, Inc. ("Morgan Drexen") for administrative and legal support services.

27. Graeff and Graeff Law used the services of Morgan Drexen for administrative and legal support services for clients obtained through Graeff's relationship with Howard Law.

28. Graeff testified under oath during his Fed. R. Bankr. P. 2004 examination taken by the plaintiff on January 30, 2015. Graeff testified that he terminated his relationships with Morgan Drexen and Howard Law as of the date of his examination.

### Stites's Debt Settlement Plan

29. On or about September 14, 2007, Stites responded to a television advertisement by Morgan Drexen offering debt settlement services. Stites called the phone number provided in

the television advertisement and spoke with a Morgan Drexen representative on or about September 14, 2007.

30. After further telephone contacts with Morgan Drexen, Stites verbally agreed to engage Howard Nassiri to settle her unsecured debts on or about September 29, 2007. Stites electronically signed an Unsecured Debt Negotiation/Settlement Attorney/Client agreement with Howard Nassiri (the "Howard Engagement Agreement") on or about October 1, 2007. Under the Howard Engagement Agreement, Howard Nassiri agreed to represent Stites in the attempted negotiation and settlement of her unsecured debts.

31. The Howard Engagement Agreement outlined the services that Howard Nassiri would perform for Stites, including:

   a. Review and analyze all relevant documents to determine Stites's legal rights and remedies pertaining to her unsecured debts,

   b. Provide Stites with a copy of all settlement letters, and

   c. Advise Stites's creditors that a settlement could only be offered when funds are available in her trust account and that time was required to build up those funds.

32. The Howard Engagement Agreement explained that representation on litigation or bankruptcy matters "may be made available under a separate agreement."

33. The Howard Engagement Agreement provided that by signing the Howard Engagement Agreement, "[y]ou authorize [Howard Nassiri] with the discretion to select an attorney licensed in your jurisdiction ("local counsel") to assist [Howard Nassiri] in providing services under this Agreement." The Howard Engagement Agreement did not identify any Oregon attorney who would provide services to Stites.

34. Howard Nassiri did not inform Stites in the Howard Engagement Agreement that it was not authorized to practice law in Oregon. Howard Nassiri did not inform Stites that Rule 5.5(c) of the Oregon Rules of Professional Conduct specifies that a lawyer admitted in a jurisdiction other than Oregon may only provide legal services in Oregon on a temporary basis

and must meet certain other requirements.

35. The Howard Engagement Agreement provided that Howard Nassiri would charge Stites an initial engagement fee of $750; $45 per month fee to cover "costs and expenses;" and an additional fee of 25% of the difference between the amount of a settlement negotiated by Howard Nassiri and the amount of debt owed by Stites for each debt settlement.

36. At the time Stites hired Howard Nassiri, she was employed as a truck driver earning $1,300 per month net after payment of taxes and withholdings.

37. Approximately one year after Stites engaged Howard Nassiri, she became disabled, and her only source of income was Social Security disability payments.

38. The Howard Engagement Agreement required Stites to pay $249.48 per month by ACH withdrawals. Under the Howard Engagement Agreement, the installment payments by Stites were first used to pay fees to Howard Nassiri. The Engagement Agreement provided that, only after all fees were paid to Howard Nassiri, would the balance of the installment payments be accumulated in an account to be used to settle debts.

39. Funds were withdrawn from Stites's bank account by ACH transfers on a monthly basis by Howard Nassiri and by Howard Law, after it assumed Howard Nassiri's responsibilities to clients and local counsel, starting on or about September 29, 2007, and continuing until on or about September 19, 2012.

40. From on or about September 29, 2007, through on or about September 19, 2012, Howard Nassiri and Howard Law collected funds from Stites in the total amount of approximately $10,372.72 and paid four of Stites's creditors a total of $2,404.27, including a payment of $288.27 on April 28, 2011 to Palisades Collection LLC ("Palisades") for Chase account number ending 6423 (the "Chase Debt").

41. Howard Law charged Stites a debt settlement fee of $2,064.66 on April 28, 2011 for its contingent fee in settling the Chase Debt.

42. Howard Law has not produced a copy of a settlement letter regarding the Chase

Debt in response to the plaintiff's request. Howard Law only produced letters confirming the settlement of the Chase Debt that were allegedly sent to Stites that purported to document an installment payment settlement of the Chase Debt over a period of over five years through June 1, 2016.

43. The Howard Engagement Agreement did not authorize the settlement of Stites's debts through a payment plan to creditors.

### The Palisades Collection Garnishment and Lawsuit

44. On or about February 16, 2012, Palisades filed a complaint against Stites in the Circuit Court for Multnomah County for the District of Oregon, *Palisades Collection LLC v. Cheryl Kae Stites*, Case No. 1202-02143 (the "Palisades Action"), due to Stites's failure to make payments on the Chase Debt.

45. Howard Law contacted Stites on or about March 26, 2012 by letter offering to represent her in the Palisades Action under a separate contract for a limited scope representation agreement. Howard Law represented in the March 26, 2012 letter that "an attorney associated with this law firm will help you represent yourself in a court of law by providing you with legal advice and suggested pleadings" and that Howard Law would not be counsel of record, but would "assist[] you with representing yourself to keep your costs at a minimum."

46. Howard Law further emphasized in the March 26, 2012 letter to Stites that "we will continue our efforts to negotiate a settlement on this account so the lawsuit can be dismissed." Howard signed the March 26, 2012 letter to Stites.

47. Stites signed a Limited Scope of Representation Agreement with Graeff as "of counsel" to Howard Law on or about April 2, 2012 (the "Graeff Limited Scope Agreement").

48. The Graeff Limited Scope Agreement required Stites to acknowledge that she had "agreed that the scope of legal services will be advisory and limited to specific services or tasks that the attorney will perform for the person" and that she "underst[oo]d that these services [were] offered at a low fixed fee for each service charged because [she was] part of an attorney-

based debt settlement program."

49. The Graeff Limited Scope Agreement indicated that Stites would be provided with a variety of services and charged a specific fee each time the service was performed, including: phone consultation with attorney ($55), responsive pleadings to summons/complaint with phone consultation ($85), summons and complaint or arbitration answer without phone consultation ($60), attend court hearing (at attorney's discretion and at attorney's regular hourly rate), and exemption filing "where available" ($55).

50. Graeff provided Stites with legal advice by phone and drafted the answer for Stites to file pro se in the Palisades Action.

51. Stites paid at least $365 in fees to Howard Law from on or about March 22, 2012 through on or about September 27, 2012 for preparation of her answer and phone consultations related to the Palisades Action.

52. Howard Law sent a letter to the attorney for Palisades Collection, Johnson Mark LLC ("Johnson Mark"), dated April 20, 2012 informing Johnson Mark that Howard Law was Stites's attorney and that all communications regarding the Chase Debt should be directed to Howard Law.

53. In connection with the representation of Stites regarding the Chase Debt and the Palisades Action, Graeff and Howard Law did not inform Stites that Howard Law made a settlement payment on her behalf on the Chase Debt on April 28, 2011 and that Howard Law charged her a debt settlement fee for its settlement of the Chase Debt.

54. A judgment in the amount of $11,679.99 plus costs of $1,080.00 was entered against Stites in the Palisades Action on September 10, 2012 (the "Palisades Judgment").

55. Stites's bank account was garnished on or about October 16, 2012 in the amount of $1,005.03 to collect on the Palisades Judgment.

Page 8 – UNITED STATES TRUSTEE'S COMPLAINT FOR REFUND OF FEES, INJUNCTIVE RELIEF, CIVIL PENALTIES AND OTHER SANCTIONS

Case 16-03013-rld    Doc 1    Filed 01/29/16

## Stites's Bankruptcy Case

56. Stites was advised by a Morgan Drexen representative on behalf of Howard Law to file bankruptcy at about the time her bank account was garnished. Howard Law, through the Morgan Drexen representative, informed Stites that Graeff would assist her with a bankruptcy case. Stites believed Graeff was part of Morgan Drexen and/or Howard Law and would be familiar with her financial situation.

57. On November 19, 2012, Howard Law through an internal accounting entry, credited Stites $1,155.12 toward the bankruptcy fees to be charged by Graeff to assist her with filing bankruptcy.

58. Stites did not sign a written fee agreement with Graeff for bankruptcy services.

59. Graeff, or a Morgan Drexen representative acting on Graeff's behalf, withdrew funds from Stites's bank account by ACH withdrawal for additional bankruptcy fees and costs in the amount of approximately $1,464.88 from on or about December 11, 2012 until on or about December 28, 2013.

60. On January 2, 2013, Graeff, or a Morgan Drexen representative acting on Graeff's behalf, sent a letter to Johnson Mark explaining that Graeff had been retained by Stites to prepare a bankruptcy petition and requested that all further attempts to collect on the Chase Debt be directed to Graeff.

61. On April 3, 2013, a Morgan Drexen representative acting on Graeff's behalf phoned Johnson Mark and asked if Palisades Collection had an offer to settle the debt owed by Stites to Palisades Collection. The Morgan Drexen representative was informed that Palisades Collection would take $9,285 to settle the debt. The Morgan Drexen representative stated that the information would be relayed to Stites.

62. Graeff referred Stites to Brandon Rennie ("Rennie") in or about January 2014 to assist Stites with her bankruptcy case. Ms. Stites testified during her Fed. R. Bankr. P. 2004 examination on April 20, 2015 that she was notified "at the last minute" that a new attorney

would be assisting her with her bankruptcy case. Ms. Stites could not recall the reason provided to her for the assignment of her bankruptcy matter to another attorney.

63. Rennie has been licensed to practice law in Oregon since September 22, 2006.

64. Rennie is the sole member of Rennie Law, LLC ("Rennie Law").

65. On September 20, 2012, Rennie signed a Local Counsel Engagement Letter in which he agreed to act as local counsel for Howard Law. Howard signed the Local Counsel Engagement Letter on behalf of Howard Law on September 26, 2012.

66. Graeff paid Rennie Law $306 on January 21, 2014; $1,415 on July 14, 2014; and $29 on August 21, 2014 for fees and costs in connection with Stites's bankruptcy case.

67. Stites signed an Attorney/Client Bankruptcy Fee Agreement retaining Rennie Law to represent her in a bankruptcy case on or about August 28, 2014.

68. Graeff invoiced Rennie Law for marketing services, credit report fees, credit counseling and education fees, and appearance attorney fees in the total amount of $520 on July 14, 2014. Rennie Law issued a check to Graeff on September 12, 2014 for $520. Rennie Law also issued a check on September 12, 2014 for $455 to Morgan Drexen for its services in preparing Stites's bankruptcy documents.

69. Rennie filed Stites's petition, schedules, and related documents on September 5, 2014.

70. Rennie disclosed, on the Disclosure of Compensation of Attorney for Debtor filed pursuant to Fed. R. Bankr. P. 2016(b) on September 5, 2014 (the "Rennie Fee Disclosure"), that he had agreed to accept fees in the amount of $1,300 from Stites and that the $335 filing fee had been paid. Rennie further disclosed in the Rennie Fee Disclosure that he had agreed to share compensation with persons who were not members of his firm including: $175 to Attorneys on Demand, $150 to Morgan Drexen for petition preparation services, and $305 to Morgan Drexen for accounting and paraprofessional services.

71. After the UST expressed concern to Graeff about his receipt of payments from Stites and Graeff's failure to disclose those payments, Graeff filed a Disclosure of Compensation of Attorney Connected with the Case (the "Graeff Fee Disclosure") on November 24, 2014 in which he represented that he received a total of $2,620 from Stites for legal services between November 29, 2012 and December 28, 2013. Graeff further represented that he retained $460 and paid $1,750 to Rennie, $290 to Stites as a refund, and incurred $120 in NSF fees. Graeff did not disclose the funds that Rennie paid to him pursuant to Graeff's $520 invoice dated July 14, 2014.

72. Stites's Schedule F filed on September 5, 2014 shows that Palisades Collection was Stites's largest creditor, owed a debt in the amount of $11,679.

73. Stites testified during her Fed. R. Bankr. P. 2004 examination on April 20, 2015 that her primary reason for filing bankruptcy was to address the Chase Debt. Stites further testified that she was not aware that Howard Law had charged her a fee of $2,064.66 to settle the Chase Debt. Stites testified that she probably would not have filed bankruptcy if the Chase Debt had been satisfied.

**Pattern and Continuation of Conduct by Howard, Howard Law, Graeff, and Graeff Law**

*The Bankruptcy Case of Peggy Clements*

74. In 2012, the plaintiff expressed concerns to Graeff and Howard regarding their practices in connection with the bankruptcy case of *In re Peggy Louise Clements*, Bankruptcy Case No. 12-60336-tmr7 (the "Clements Case").

75. On December 18, 2012, the court entered a Stipulated Order to Disgorge Attorneys' Fees and Costs Pursuant to 11 U.S.C. §329(b) and Regarding Representation of Debtor (the "Clements Stipulated Order"). Pursuant to the Clements Stipulated Order, Howard Law agreed to disgorge funds in the amount of $4,864.22 to the bankruptcy estate in the Clements Case. In addition, the Clements Stipulated Order provided that with the debtor's consent, Graeff could continue to represent her provided that they enter into an attorney/client

agreement in accordance with the Bankruptcy Code, Bankruptcy Rules, and applicable law in the District of Oregon and without any involvement of Howard Law and/or Morgan Drexen.

**Pattern and Continuation of Conduct by Howard and Howard Law**

76. In April 2015, Oregon clients of Howard Law were notified by mail by Howard Law that "James C. Loy will now be serving as the licensed attorney in Oregon for your file."

77. Loy signed a Local Counsel Engagement Letter with Howard Nassiri on or about August 6, 2007.

78. Loy agreed to advise Oregon clients regarding Oregon law, but Loy did not agree to provide bankruptcy advice. Loy does not practice bankruptcy law.

79. Loy terminated his relationship with Howard Law in or about July 2015.

80. Shortly in advance of Howard's Fed. R. Bankr. P. 2004 examination by the plaintiff on September 1, 2015, Howard provided lists of Oregon bankruptcy clients for Howard Law and Graeff to the plaintiff. The lists provided by Howard to the plaintiff showed that, as of approximately the date of Howard's Fed. R. Bankr. P. 2004 examination, Howard Law had 22 Oregon clients with active files and Graeff had 28 Oregon clients with active files.

81. Two of Graeff's Oregon clients on the list provided by Howard to the plaintiff engaged Graeff in June 2015.

82. Howard testified during his Fed. R. Bankr. P. 2004 examination that the clients on Graeff's list became clients of Howard Law when Graeff terminated his relationship with Howard Law.

83. During Howard's Fed. R. Bankr. P. 2004 examination, Howard testified that he could not identify which Oregon clients had retained Howard Law for bankruptcy services.

84. Howard refused to answer the plaintiff's questions during the Fed. R. Bankr. P. 2004 examination regarding whether an Oregon attorney had agreed to act as local counsel for Howard Law's Oregon bankruptcy clients.

85. Howard and/or Howard Law have entered into bankruptcy and debt settlement agreements with numerous consumers throughout the country. Howard and Howard Law have intentionally violated 11 U.S.C. § 526, or have engaged in a clear and consistent pattern or practice of violating that section, with respect to many of these engagements.

## FIRST CLAIM FOR RELIEF

### Against Graeff and Graeff Law

### Refund of Fees

### 11 U.S.C. § 329(b)

86. The plaintiff realleges paragraphs 1 through 85 above.

87. Graeff and Graeff's Law's fees paid within one year of the filing of Stites's case in the amount of at least $1,390 should be determined to be unreasonable pursuant to 11 U.S.C. § 329(b), and Graeff's fee agreement with Stites cancelled because the services provided by Graeff exceeded the reasonable value of his services. All fees received by Graeff and Graeff Law within one year of the filing of Stites's case should be refunded pursuant to 11 U.S.C. § 329(b).

## SECOND CLAIM FOR RELIEF

### Against Howard and Howard Law

### Civil Penalty for Misrepresenting Services

### 11 U.S.C. §§ 526(a)(3), 526(c)(5)

88. The plaintiff realleges paragraphs 1 through 85 above.

89. Defendants Howard and Howard Law in their own capacity and as successors to Howard Nassiri violated 11 U.S.C. § 526(a)(3) by misrepresenting the services that they would perform to Stites in one or more of the following respects:

    a. By representing that Howard, Howard Nassiri, and Howard Law could provide legal assistance to her as an Oregon resident.

    b. By representing that Howard Nassiri and Howard Law would review and analyze relevant documents to determine Sites's legal rights and remedies pertaining to her

unsecured debts.

    c. By representing that Stites would be provided with a copy of all settlement letters.

    d. By representing that Howard Nassiri and Howard Law would explain to creditors that a settlement could only be offered when funds were available in the trust account and that time was required to build up these funds.

90. Howard and Howard Law intentionally violated 11 U.S.C. § 526(a)(3) or engaged in a clear and consistent pattern or practice of violating that section.

91. Pursuant to 11 U.S.C. § 526(c)(5), a civil penalty should be imposed against Howard and Howard Law up to the amount of $5,000 for their violation of 11 U.S.C. § 526(a)(3).

**THIRD CLAIM FOR RELIEF**

**Against Graeff and Graeff Law**

**Civil Penalty for Misrepresenting Services**

**11 U.S.C. §§ 526(a)(3), 526(c)(5)**

92. The plaintiff realleges paragraphs 1 through 85 above.

93. Defendants Graeff and Graeff Law violated 11 U.S.C. § 526(a)(3) by misrepresenting the services that they would perform to Stites in at least one or more of the following respects:

    a. By representing that Graeff, as an attorney, would competently prepare a responsive pleading for Stites and provide her with appropriate advice in the Palisades Action.

    b. By representing that Graeff would provide Stites with bankruptcy services when, in fact, he continued to negotiate at least the Chase Debt and did not file a bankruptcy petition and related documents for Stites.

94. Graeff and Graeff Law intentionally violated 11 U.S.C. § 526(a)(3) or engaged in a clear and consistent pattern or practice of violating that section.

95. Pursuant to 11 U.S.C. § 526(c)(5), a civil penalty should be imposed against Graeff and Graeff Law in the amount of $2,940, which is three times the amount of the fees Graeff retained from payments made by Stites ($460) and the amount Graeff invoiced to Rennie Law in connection with Stites's case ($520), for their violation of 11 U.S.C. § 526(a)(3).

### FOURTH CLAIM FOR RELIEF
### Against Howard and Howard Law
### Civil Penalty for Failing to Perform Services
### 11 U.S.C. §§ 526(a)(1), 526(c)(5)

96. The plaintiff realleges paragraphs 1 through 85 above.

97. Howard and Howard Law violated 11 U.S.C. § 526(a)(1) by failing to perform services they agreed to perform in at least one or more of the following ways:

   a. By failing to review and analyze relevant documents to determine Stites's legal rights and remedies pertaining to her unsecured debts, including without limitation the Chase Debt.

   b. By failing to provide Stites with a copy of at least the Chase Debt settlement letter.

   c. By negotiating for the settlement of the Chase Debt in installments instead of a lump sum as contemplated by the Howard Engagement Agreement.

98. Howard and Howard Law intentionally violated 11 U.S.C. § 526(a)(1) or engaged in a clear and consistent pattern or practice of violating that section.

99. Pursuant to 11 U.S.C. § 526(c)(5), a civil penalty should be imposed against Howard and Howard Law up to the amount of $5,000 for their violation of 11 U.S.C. § 526(a)(1).

## FIFTH CLAIM FOR RELIEF

## Against Graeff and Graeff Law

## Civil Penalty for Failing to Perform Services

## 11 U.S.C. §§ 526(a)(1), 526(c)(5)

100. The plaintiff realleges paragraphs 1 through 85 above.

101. Graeff and Graeff Law violated 11 U.S.C. § 526(a)(1) by failing to perform services they agreed to perform in at least one or more of the following ways:

    a. By failing to competently prepare a responsive pleading for Stites and provide her with appropriate advice in the Palisades Action.

    b. By failing to timely provide bankruptcy services as requested by Stites.

102. Graeff and Graeff Law intentionally violated 11 U.S.C. § 526(a)(1) or engaged in a clear and consistent pattern or practice of violating that section.

103. Pursuant to 11 U.S.C. § 526(c)(5), a civil penalty should be imposed against Graeff and Graeff Law for their violation of 11 U.S.C. § 526(a)(1) in the amount of $2,940, which is three times the amount of the fees Graeff retained from payments made by Stites ($460) and the amount Graeff invoiced to Rennie Law in connection with Stites's case ($520).

## SIXTH CLAIM FOR RELIEF

## Against Howard and Howard Law

## Injunction Against Continued Violation of 11 U.S.C. § 526

## 11 U.S.C. § 526(c)(5)

104. The plaintiff realleges paragraphs 1 through 85 above.

105. Pursuant to 11 U.S.C. § 526(c)(5), an injunction should be issued prohibiting Howard and Howard Law from violating 11 U.S.C. § 526 due to their intentional violation of 11 U.S.C. § 526 and/or their clear and consistent pattern or practice of violating 11 U.S.C. § 526.

## SEVENTH CLAIM FOR RELIEF

### Against Graeff and Graeff Law

### Injunction Against Continued Violation of 11 U.S.C. § 526

### 11 U.S.C. § 526(c)(5)

106. The plaintiff realleges paragraphs 1 through 85 above.

107. Pursuant to 11 U.S.C. § 526(c)(5), an injunction should be issued prohibiting Graeff and Graeff Law from violating 11 U.S.C. § 526 due to their intentional violation of 11 U.S.C. § 526 and/or their clear and consistent pattern or practice of violating 11 U.S.C. § 526.

## EIGHTH CLAIM FOR RELIEF

### Against Graeff

### Discipline and Sanctions under the Bankruptcy Court's Inherent Authority

108. The plaintiff realleges paragraphs 1 through 85 above.

109. Graeff should be disciplined and sanctioned under the bankruptcy court's inherent power to discipline attorneys who appear before it and to sanction attorneys for "bad faith" or willful misconduct" due to his failure to properly advise Stites regarding the Chase Debt, continued attempt to negotiate the Chase Debt although Stites had retained him for bankruptcy, failure to timely provide bankruptcy services to Stites, and Graeff's relationship with Howard and Howard Law that facilitated their unauthorized practice of law in the District of Oregon in violation of the Oregon Rules of Professional Conduct.

110. The civil sanctions imposed against Graeff should be sufficient to deter Graeff from engaging in similar misconduct in the future and should include return of all fees Graeff received in connection with Stites's bankruptcy case, a report to the court of the transition of Graeff's bankruptcy clients after he terminated his relationship with Howard Law, restrictions on the sharing of fees for bankruptcy clients by Graeff with attorneys not licensed to practice in Oregon, and taking continuing legal education in ethics sufficient to earn five credit hours.

WHEREFORE, the plaintiff prays for a judgment:

1. Against Howard and Howard Law:

    a. On the plaintiff's second and fourth claims for relief, awarding civil penalties in the amount up to $5,000 total;

    b. On the plaintiff's sixth claim for relief, imposing an injunction prohibiting the violation of 11 U.S.C. §526; and

    c. Requiring the payment of the plaintiff's costs as allowed by the court.

2. Against Graeff and Graeff Law:

    a. On the plaintiff's first claim for relief, requiring a refund of all fees received by Graeff and Graeff Law within one year of the filing of Stite's bankruptcy case.

    b. On the plaintiff's third and fifth claims for relief, imposing civil penalties in the amount up to $2,940 total;

    c. On the plaintiff's seventh claim for relief, imposing an injunction prohibiting the violation of 11 U.S.C. § 526; and

    d. Requiring the payment of Plaintiff's costs as allowed by the court.

3. Against Graeff:

    a. On the plaintiff's eighth claim for relief, imposing appropriate civil sanctions under the court's inherent power.

4. Against all defendants:

    a. Providing for such other and further relief as the court deems just and proper.

/ / /

/ / /

/ / /

/ / /

DATED this 29th day of January, 2016.

> Respectfully submitted,
> GAIL BREHM GEIGER
> Acting U.S. Trustee for Region 18
>
>  /s/ Carla G. McClurg
> Carla G. McClurg, CSB# 227738
> Trial Attorney