Carla Gowen McClurg, OSB #165144
Office of the United States Trustee
620 SW Main Street, Suite 213
Portland, OR 97205
Telephone: (503) 326-7659
Email: carla.mcclurg@usdoj.gov

Attorney for Gail Brehm Geiger, Acting United States Trustee for Region 18

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Cheryl Kae Stites,<br><br>Debtor. | Case No.   14-35071-rld7 |
| In re<br><br>Kathleen Arthur,<br><br>Debtor | Case No.   15-62393-tmr7 |
| In re<br><br>Mary Ann Michiko Roberts,<br><br>Debtor | Case No. 15-63116-tmr7 |
| United States Trustee,<br><br>Plaintiff,<br><br>  v.<br><br>Vincent Howard,<br>Howard Law, P.C.,<br>Erik Graeff,<br>Law Offices of Erik Graeff, P.C.,<br><br>Defendants. | Adversary Nos.   16-3013-rld<br>                 16-6061-rld<br>                 16-6062-rld<br><br>**PLAINTIFF UNITED STATES TRUSTEE'S TRIAL MEMORANDUM**<br><br>Trial Date:    January 4-5, 2017<br>Trial Time:    9:00 a.m.<br>Location:      Courtroom 3 |

The Acting United States Trustee for Region 18, Gail Brehm Geiger ("Plaintiff") submits

this memorandum regarding the trial set to commence on January 4, 2017 on the United States

**Page 1 – PLAINTIFF UNITED STATES TRUSTEE'S TRIAL MEMORANDUM**

Trustee's Complaints for Refund of Fees, Injunctive Relief, Civil Penalties, and Other Sanctions filed against defendants Vincent Howard, Howard Law, P.C. (the "Howard Defendants"), Erik Graeff, and Law Offices of Erik Graeff, P.C. (the "Graeff Defendants") in the above-referenced adversary proceedings.

As of the date of this memorandum, Plaintiff and the Graeff Defendants have agreed to the general terms of a settlement and compromise of Plaintiff's claims in the Adversary Proceedings against the Graeff Defendants. Plaintiff and the Graeff Defendants expect to finalize documents to memorialize the agreement before trial. This memorandum therefore does not discuss Plaintiff's claims against the Graeff Defendants.

Based upon the Court's instructions during a status hearing on the adversary proceedings on December 7, 2016, Plaintiff will not recite facts regarding the adversary proceedings outlined in the Final Joint Pretrial Order and in Plaintiff's Concise Statement of Additional Facts and Plaintiff's Response to the Howard Defendants' Concise Statement of Facts filed in each of the adversary proceedings on November 28, 2016.[1]

## I.  Summary of Argument

The Howard Defendants formed a national network of attorneys ("Howard Network Attorneys") affiliated with Morgan Drexen, Inc. ("Morgan Drexen") and enlisted Oregon attorneys to assist in providing services to clients in Oregon. Clients, including Oregon clients, believed that Howard Law, Morgan Drexen, and the Howard Network Attorneys were part of a single enterprise.

Through the expansive network, millions of dollars was debited from consumer accounts by transactions initiated by Morgan Drexen and moved between Howard Network Attorney accounts, including accounts in the names of Howard Law and Graeff Law. As will be demonstrated by facts presented at trial, the network enterprise extracted as much money as

---

[1]  ECF Nos. 57 and 58 filed in Adv. No. 16-3013-rld (Stites); ECF Nos. 37 and 38 in Adv. No. 16-6061-rld (Arthur); and ECF Nos. 40 and 41 in Adv. No. 16-6062-rld (Roberts).

Case 16-03013-rld    Doc 75    Filed 12/19/16

possible from consumers at low cost to the enterprise. This was accomplished by providing little, if any, legal advice to clients at the outset of engagements and very little legal advice thereafter; charging clients for services and expenses that they either did not want or that were excessive or unnecessary; and performing services through a highly routinized and mechanized process that resulted in little consideration for the needs and best interests of clients. The Howard Defendants' determination to extract as much in fees as possible from consumers is evidenced by their continued debiting of Oregon consumer accounts for fees even after no licensed Oregon attorney was affiliated with Howard Law.

The Howard Defendants are debt relief agencies subject to 11 U.S.C. § 526. They provided "bankruptcy assistance" as defined by 11 U.S.C. § 101(4A) to debtors Cheryl Kae Stites ("Stites"), Kathleen Arthur ("Arthur"), and Mary Ann Michiko Roberts ("Roberts") (collectively the "Debtors") through their own conduct, the conduct of Morgan Drexen, and the conduct of the Oregon attorneys they enlisted in their enterprise.

The Howard Defendants violated 11 U.S.C. §§ 526(a)(1)-(3). Their violations were far-reaching, intentional, and continuous and aimed primarily at a vulnerable segment of society. The Howard Defendants should be held accountable under the debt relief agency provisions of the Bankruptcy Code that clearly apply to their conduct. They also should refund fees that were not disclosed and were excessive under 11 U.S.C. § 329.

## II.  Summary of Facts

### A.  Howard Law's Expansive Attorney Network and Relationship with Morgan Drexen

Howard has been the president and only shareholder of Howard Law since it was formed in July 2011. Howard previously was a partner in Howard Nassiri, LLP and Howard Nassiri, P.C. (collectively "Howard Nassiri"). Howard Nassiri was formed in 2007.

Howard Nassiri offered legal services to clients throughout the United States. Howard

Nassiri's business model was centered on using Morgan Drexen[2] to serve as the main point of contact for clients and creditors, to maintain files, to manage trust accounts, and to make appointments for clients with attorneys when clients requested to speak to an attorney. *See* Exhibit 3. Howard Law assumed responsibility for Howard Nassiri's debt settlement and bankruptcy clients after Howard Nassiri dissolved.

The Howard Network Attorneys were located throughout the United States and used Morgan Drexen in connection with their contracts with Howard Nassiri/Howard Law. Exhibit 61. The Howard Network Attorneys included "Engagement Counsel," whose names were listed on the clients' initial fee agreements, and "Local Counsel," who provided some services for clients of Engagement Counsel. Exhibit 3. Howard Nassiri/Howard Law was responsible for supervising Local Counsel for Engagement Counsel. Exhibit 3. Howard Law's professional malpractice insurance covered Howard Network Attorneys, including Oregon attorneys. Exhibit 45.

Howard Nassiri and Howard Law, who were Engagement Counsel, offered bankruptcy and debt settlement services to Oregon residents and entered into agreements with Oregon attorneys Erik Graeff ("Graeff"), Brandon Rennie ("Rennie"), and James C. Loy ("Loy") (collectively the "Oregon Network Attorneys") to act as "Local Counsel" for Howard Nassiri's and Howard Law's clients in Oregon. Exhibits 1, 2, 3, 12, 13, and 14.

Graeff was an Engagement Counsel as well as Local Counsel. Exhibits 1, 2, and 3. Graeff's Letter of Understanding with Howard Nassiri recites that Howard Nassiri shared responsibility for supervising Morgan Drexen. Exhibit 3.

---

[2] Before its relationship with Howard Nassiri, Morgan Drexen had a debt settlement business that was not affiliated with attorneys.

The Local Counsel agreements with Graeff and Rennie explained that Howard Nassiri/Howard Law was responsible for providing Local Counsel to all Engagement Counsel in the network. Exhibits 1, 12. Local Counsel performed work for the clients of other Engagement Counsel pursuant to their agreements with Howard Law/Howard Nassiri and not pursuant to agreements with Graeff or any other Engagement Counsel. Exhibit 3.

Howard Law held out the Oregon Network Attorneys to the public as part of the firm. For example, the Oregon Network Attorneys were listed as associate attorneys of Howard Law on Howard Law's website, www.howardlawpc.com. Exhibit 40, p. 4. The Oregon Network Attorneys were also named as "Regional Counsel" on letterhead sent to Oregon clients of Howard Law and in correspondence to creditors. Exhibit 4.

Howard Law compensated the Oregon Network Attorneys by paying them minimum monthly retainers of $750 for reviewing debt settlement agreements. Exhibits 1, 12, 13, and 14. In addition, the Oregon Network Attorneys were paid 85% of amounts billed for other consultations with Howard Law's Oregon clients pursuant to Limited Scope Representation agreements. Exhibits 1, 12, 13, and 14. Howard Nassiri or Howard Law retained 15% of the amounts billed by Local Counsel for Limited Scope Representation services. Exhibits 1, 12, 13, and 14.

## B. Morgan Drexen's Comprehensive Services and Nearly-Exclusive Contact with Howard Law Clients

The Howard firms used Morgan Drexen for administrative and legal support services. Morgan Drexen was located in the same building as Howard Law in Costa Mesa, California. Exhibit 134, p. 148, li. 15-17. Howard Law clients' primary contact was with employees of Morgan Drexen. *See, e.g.,* Exhibits 128, 129, 130, and 130 (underlined testimony of consumers). Morgan Drexen's contact information was generally the only contact information provided to

Howard Law clients, including Oregon clients. *See* Exhibit 4 and Exhibits 128, 129, 130, and 130 (underlined testimony of consumers). Clients generally did not talk to an attorney unless they asked to speak to one and, in that event, generally had to request appointments with Howard Network Attorneys through Morgan Drexen. Exhibit 137, p. 120, li, 6-11. Oregon Network Attorneys used Morgan Drexen's services when providing services to Howard Law's Oregon clients. Exhibits 1, 12, and 14.

### C. Millions of Dollars Received by Howard Law and Morgan Drexen

Howard Law's financial statements show total income of over $3.8 million in 2014 and over $3.5 million from January until June 2015 for "Consumer Protection Services." Exhibit 59. Howard signed a declaration on June 17, 2016 in litigation commenced by the Consumer Financial Protection Bureau ("CFPB") in the Central District of California against Morgan Drexen (the "CFPB Litigation") explaining that of client payments of $8,094,336.28 received after June 18, 2015, the attorneys formerly associated with Morgan Drexen, including Howard Law, determined that their fees were $1,851,644.50. Exhibit 34, p. 3.

Massive amounts of cash flowed through bank accounts for Howard Law and Williamson & Howard LLP ("Williamson & Howard"), another law firm in which Howard was a partner. From December 2014 through August 2016, over $42.7 million was deposited into accounts held in the name of Howard Law and over $29.8 million was deposited into accounts held in the name of Williamson & Howard. Exhibit 94.

Morgan Drexen's 2010 tax return showed gross income of over $43 million. Exhibit 53. The bank statement for one of Morgan Drexen's accounts in March 2012 is 24 pages long and shows total deposits of over $5.1 million. Exhibit 54, p.1. A financial statement dated March 2014 reflected gross revenues received by Morgan Drexen of over $46 million in 2012, over $33

million in 2013, and over $5 million for January through March 2014. Exhibit 92. And on March 16, 2016, the District Court in the CFPB Litigation entered a final judgment ordering Morgan Drexen to pay $132,882,488 as restitution to affected consumers. Exhibit 149.

### D. Graeff's Termination of Relationship with the Howard Defendants

On December 11, 2014, Graeff sent a letter to Jeffrey Katz ("Katz"), General Counsel for Morgan Drexen (the "Termination Letter"). Exhibit 8. Graeff testified that he sent the Termination Letter to Katz to terminate his relationships with Morgan Drexen and Howard Law. Exhibit 134, p. 47, li. 15 -22. Graeff testified that he did not send a separate letter to Howard because he "knew that Mr. Katz and Mr. Howard were very close and had offices right across the way" and that he believed that Katz would initiate a process to wrap up his affairs with Morgan Drexen and Howard Law. Exhibit 134, p. 48, li. 8 – p. 49, li. 15.

Graeff testified that approximately ten Oregon clients entered into new agreements with him to represent them in their legal matters. Exhibit 134, p. 54, li. 4-11. Graeff testified that he believed that the rest of the Oregon clients were transferred to another Oregon attorney. Exhibit 134, p. 55, li. 13-18. However, Katz testified that Howard agreed to accept the transfer of the Oregon clients from Graeff. Exhibit 144, p. 48, li. 17-25. Howard Law's firm information started to appear on the monthly statements for Graeff's Oregon clients for February 2015. Exhibit 10.

On February 20, 2015, $52,644.66 was transferred from an IOLTA client trust account held in the name of Graeff Law to an IOLTA client trust account held in the name of Howard Law.[3] Exhibits 56, 57. Howard Law continued to debit Oregon consumer accounts after the transition and entered into agreements with new Oregon clients after Graeff's termination although Howard Law was not then affiliated with any Oregon bankruptcy attorney. Exhibit

---

[3] Plaintiff requested an accounting for the transferred funds from the Howard Defendants and Graeff but did not receive documentation regarding the transfer, other than heavily redacted and indecipherable reports from the Howard Defendants. *See* Exhibit 11.

100; Exhibits 130, 131 (underlined testimony of Roberts and Raymonde Voss).[4]

After Morgan Drexen's bankruptcy and the subsequent shut-down of its operations at the end of June 2015, Howard hired Morgan Drexen employees to work for Howard Law. Exhibit 35, pp. 17-18. Howard also obtained access to client records and accounting information on a back-up system and seamlessly continued to debit consumer accounts for fees, including the accounts of Oregon clients. *See* Exhibit 32, pp. 15-17.

### E. Oregon Howard Law Network Clients

The facts pertaining to the Debtors and their experiences with Morgan Drexen, Howard Law, and the Oregon Network Attorneys are set forth in other documents, referenced on page 2 of this memorandum, and are not separately recited herein. Plaintiff highlights the story of Raymonde Voss ("Voss") below to provide the Court with an additional example of the Howard Defendants' conduct in Oregon.[5] There are many more affected Oregon consumers like Voss who paid fees to Howard Law, including fees that Howard Law characterized as bankruptcy fees, after Graeff terminated his relationship with Howard Law.

Voss is a retired 86-year-old woman. Exhibit 131, p. 6, li. 15-24. In April 2015, Voss called Morgan Drexen in response to a television advertisement during The Price is Right (the "First Call"). Exhibit 131, p. 7, li. 6-21, p. 51, li. 3-19. Currently, and at the time of the First Call, Voss's monthly income consisted of $711 from Social Security benefits and $184.63 from a State of Nevada pension. Exhibit 131, p. 9, li. 11-17.

Voss called Morgan Drexen to consolidate debt totaling about $9,500. Exhibit 131, p. 8,

---

[4] Rennie had terminated his relationship with Howard Law by this time and Loy did not undertake bankruptcy representation.

[5] The United States Trustee has highlighted conduct in Oregon, but believes that similar conduct occurred throughout the United States.

li. 10-19, p.9, li. 1-10.  Voss did not want to file bankruptcy and informed the Morgan Drexen representative during the First Call that she did not want to file bankruptcy.  Exhibit 131, p. 9, li. 23-25.  The Morgan Drexen representative told Voss that her payment would be $186 per month. Exhibit 131, p. 9, li. 18-22.  Voss understood that her debt would be consolidated at a lower interest rate.  Exhibit 131, p. 9, li. 25 – p. 10, li. 2.

During the First Call, Voss was informed by the Morgan Drexen representative that her attorney was Howard, a California attorney.  Exhibit 131, p. 11, li. 1-17.  Voss was also told that Howard Law would make an Oregon attorney, Loy, available to her.  Exhibit 131, p. 11, li. 1-17. The Morgan Drexen representative informed Voss that she had an appointment on May 27, 2015 to talk to an attorney.  Exhibit 131, p. 11, li. 1-5.

After the First Call, Voss received and signed three agreements with Howard Law: (1) an Attorney/Client Fee Agreement Debt Resolution Representation, (2) the Attorney/Client Bankruptcy Fee Agreement, and (3) the Legal Assistance Program True Retainer Agreement (the "LAP Agreement").  Exhibit 131, pp. 106-114.

Voss did not understand that she had signed an agreement for bankruptcy services or that she would be charged $1,500 for bankruptcy.  Exhibit 131, p. 15, li. 21-24 – p. 16, li. 2.  Voss also did not understand that she would be charged a contingency fee by Howard Law of 19.8% of the amount of debt reduced for debt settlement.  Exhibit 131, p. 17, li. 4-22.  Voss also did not understand the $50 monthly fee under the LAP Agreement.  Exhibit 131, p. 18, li. 9-17.

On May 27, 2015, Morgan Drexen coordinated a call between Voss and Howard.  Exhibit 131, p. 12, li. 16 – p. 13, li. 8.  Voss asked Howard if she could consolidate her debts, and Howard informed Voss that he would "take her case."  Exhibit 131, p. 13, li. 9-17.

Howard Law electronically debited $186 per month from Voss's bank account from May 4, 2015 through November 3, 2015, totaling $1,302. Exhibits 120, 121. These amounts were applied to bankruptcy fees, Exhibit 120, although Voss had made clear that she did not want to file bankruptcy.

In July 2015, Voss traveled from Chiloquin, Oregon to the courthouse in Klamath Falls, Oregon in order to obtain contact information for Loy because she was not provided with it. Exhibit 131, p. 18, li. 22 – p. 19, li. 23. Loy told Voss that he had never heard of her. Exhibit 131, p. 18, li. 22 – p. 19, li. 1.

In September 2015, Voss contacted Howard Law regarding the status of her matter because she had been told that she had an available trust balance of only approximately $300 (the "September Call"). Exhibit 131, p. 20, li. 4-15. Voss had not received statements at the time of the September Call and requested them. Exhibit 131, p. 20, li. 16-18. After receiving a statement, Voss contacted Howard Law in September 2015 and requested that Howard Law stop withdrawing funds from her bank account. Exhibit 131, p. 21, li. 2-10.

Howard spoke to Voss by phone in October 2015. Exhibit 131, p. 27, li. 6-21. Howard informed Voss that he was going to "quit" and offered to transfer Voss to someone else. Exhibit 131, p. 27, li. 15-19. Voss told Howard she did not want another attorney but instead wanted to quit. Exhibit 131, p. 27, li. 19-21. Howard informed Voss that he had prepared bankruptcy documents for her and that Voss could talk directly to her creditors to try to settle her debts. Exhibit 131, p. 28, li. 12-16.

Howard Law continued to electronically debit Voss's bank account in October and November 2015. Exhibit 131, p. 21, li. 5-6; Exhibit 121, pp. 6-7. When Voss contacted her bank, she was told that Howard Law was passing different electronic checks through her account

and that there was no way to stop the electronic check debits without closing her account. Exhibit 131, p. 22, li. 15-22. Voss closed her bank account of 20 years to stop Howard Law from taking funds from her. Exhibit 131, p. 22, li. 15 – p. 23, li. 4.

Voss received refund checks in the amount of $308 and $186 from Howard Law in November 2015. Exhibit 131, p. 24, li. 15 – p. 25, li. 1. Voss did not receive an accounting with the refund checks from Howard Law. Exhibit 131, p. 24, li. 18-21.

Voss ultimately was able to reach an agreement with her main creditor without Howard Law's assistance. The creditor agreed to reduce Voss's debt to $2,800 and accept $50 monthly installments. Exhibit 131, p. 30, li. 2-25.

Voss fits the profile of Howard Law's typical client: poor and unsophisticated. Exhibit 35, p. 9. Voss's situation is also similar to the Debtors' situations – unemployed, reliant on Social Security, and struggling with debt.

### III. Legal Analysis

**A. The Howard Defendants provided bankruptcy assistance to the Debtors.**

Sections 526 through 528 of the Bankruptcy Code set forth requirements and restrictions for debt relief agencies. The term "debt relief agency" means "any person who provides bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer." 11 U.S.C. § 101(12A). The definition of "bankruptcy assistance" in this context[6] is broad:

---

[6] The fact that the Howard Law provided "bankruptcy assistance" as defined in 11 U.S.C. § 101(4A) should in no way be interpreted to suggest that the practice of having clients sign bankruptcy agreements and pay up-front fees pursuant to those agreements was appropriate for clients – like Ms. Voss – who were not interested in filing for bankruptcy. This practice has been the subject of regulatory action by the CFPB in the CFPB Litigation. The CFPB asserted that Morgan Drexen, in response to FTC regulations in 2010, implemented a "Dual Contract Model" of presenting consumers with bankruptcy contracts in addition to debt settlement contracts to disguise consumers' up-front payments for debt relief services as payments for bankruptcy-

> The term "bankruptcy assistance" means any goods or services
> sold or otherwise provided to an assisted person with the express
> or implied purpose of providing information, advice, counsel,
> document preparation, or filing, or attendance at creditors' meeting
> or appearing in a case or proceeding on behalf of another or
> providing legal representation with respect to a case or proceeding
> under this title.

11 U.S.C. § 101(4A).

Section 526 was enacted in 2005 as part of the Bankruptcy Abuse Prevention and
Consumer Protection Act "to correct perceived abuses of the bankruptcy system." *Milavetz,
Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231-32 (2010); *Hersh v. United States*,
553 F.3d 743, 746 (5th Cir. 2008) ("BAPCPA is a 'comprehensive package of reform measures'
designed to improve bankruptcy law and practice by restoring personal responsibility and integrity
in the bankruptcy system and ensure that the system is fair to both debtors and creditors").

Services provided to assisted persons in an effort to avoid bankruptcy constitute
"bankruptcy assistance" because "negotiations to prevent bankruptcy may demonstrate that the
thought of bankruptcy was the impelling cause of the payment." *Conrad, Rubin & Lesser v.
Pender*, 289 U.S. 472, 479 (1933). "'A man is usually very much in contemplation of a result
which he employs counsel to avoid.'" *Id.* (quoting *Furth v. Stahl*, 205 Pa. St. 439, 442 (Pa.
1903)). Moreover, the definition of "bankruptcy assistance" in section 101(4A) expressly
includes the provision of goods or services with the express or *implied* purpose of providing
"information, advice, counsel, document preparation . . . with respect to a case proceeding under
[title 11]." 11 U.S.C. § 101(4A) (emphasis added).

Attorneys who provide bankruptcy assistance to assisted persons[7] are debt relief agencies.
*Milavetz*, 559 U.S. at 239. But "bankruptcy assistance" is broader than "legal advice." Thus, an
attorney or other person can be a debt relief agency even if no legal advice is provided to the
assisted person.

---

related work. Exhibit 147, p. 4.

[7] The Debtors are assisted persons as defined by 11 U.S.C. § 101(3).

In the Stites case, Howard Law (as successor to Howard Nassiri) expressly and impliedly offered to provide bankruptcy assistance to Stites in the Unsecured Debt Negotiation/Settlement Attorney/Client agreement with Howard Nassiri (the "Stites Engagement Agreement"), which indicated Howard Nassiri would represent Stites in the attempted negotiation and settlement of her unsecured debts and that representation on litigation or bankruptcy matters "may be made available under a separate agreement." During the more than five year period during which Stites paid $10,372.22 to Howard Law, bankruptcy was an option that was contemplated and could have been explored further earlier had Stites received competent legal advice in return for the thousands of dollars that she paid. Ultimately, Howard Law, through Morgan Drexen, recommended that Stites file a bankruptcy case only after first negotiating a financially impossible debt settlement that ended in a garnishment. Howard Law provided additional bankruptcy assistance to Stites by "transferring" or "converting" her file to a bankruptcy file and crediting the funds she had accumulated to Graeff Law to pay for the bankruptcy case preparation.

In the Arthur case, the Checklist of Attorney Paperwork received by Arthur from Morgan Drexen included Graeff Law on the center top portion of the page and indicated also in the top portion of the page that Graeff Law was part of the "Of Counsel Network of Regional Attorneys, Howard Law, P.C., Firm of Counsel, Principal Licensed in California." The Checklist was a list of items to be sent to Morgan Drexen to "ASSIST THE LAW FIRM WITH THE PROCESSING OF YOUR BANKRUPTCY SERVICES." Exhibit 22. Arthur also had conversations with Rennie, a Local Counsel attorney, who provided services consistent with Rennie's agreement with Howard Law (as Local Counsel's contract was with Howard Law).

In the Roberts case, Howard Law collected fees from Roberts for bankruptcy representation after Graeff terminated his relationship with Howard Law. Log notes for Roberts' file with Howard Law show that Roberts had conversations with Morgan Drexen representatives about the status of her bankruptcy after Graeff terminated his relationship with Howard Law. In

addition, Roberts and Howard communicated directly about the preparation and filing of Roberts' bankruptcy case. Howard Law ultimately paid $1,689 to Oregon bankruptcy attorney Heather Brann ("Brann") to assist Roberts with her bankruptcy matter. Howard Law prepared Roberts' bankruptcy documents and invoiced Brann $854 for its work in preparing those documents and for marketing and advertising, credit counseling and debtor education, and a credit report.

The Howard Defendants are accountable not only for their own conduct but also for the actions of and services provided to clients by Morgan Drexen and the Oregon Network Attorneys. The Howard Defendants held out to clients and the public that Howard Law was a national law firm, that the Oregon Network Attorneys were Howard Law attorneys, and that Morgan Drexen was acting on behalf of the Howard Network Attorneys and under their supervision. Whether or not these representations were true, the Howard Defendants cannot now disclaim responsibility for the consequences of having made them.

### B. The Howard Defendants Received Money or Other Valuable Consideration

The Howard Defendants received "the payment of money or other valuable consideration" from "assisted persons" Stites, Arthur, and Roberts and thus are debt relief agencies accountable for their conduct under section 526. *See Huffman v. Legal Helpers Debt Resolution, LLC*, 505 B.R. 726, 759-62 (Bankr. D. Miss. 2014) (holding that Legal Helpers was a debt relief agency based on the debtor's payment for promised services, which included bankruptcy assistance).

Howard Law collected $10,372.72 from Stites from September 29, 2007 through November 19, 2012. Of that amount, Howard Law only paid Stites's creditors $2,404.34 and credited $1,155.12 to Graeff Law on Stites's behalf. Howard Law and/or Howard retained the

balance of $6,813.33 in fees and charges.

The Howard Defendants also received "the payment of money or other valuable consideration" from "assisted person" Arthur. Between January 1, 2013 and October 16, 2014, Arthur's bank account was debited in the amount of $3,849 by Graeff Law for bankruptcy fees. After a letter from Arthur's pro bono attorney, checks were issued to Arthur drawn on an account in the name of Graeff Law in the amount of $689 on December 8, 2014 and $1,015 on December 11, 2014 (the "Checks"). Arthur never negotiated the Checks because she disagreed with the amounts. By April 2015, Graeff Law's accounts were closed. The location of any trust funds earmarked to pay the Checks is not clear, but such funds likely remained under the control of the Howard Defendants.

Furthermore, Arthur was charged for Limited Scope Representation services for which Howard Law would have retained 15% of what Arthur was charged. The monthly statements for Arthur's file show that she was charged $65 on August 20, 2013; October 3, 2013; and October 16, 2014 for Local Counsel attorney consultations. Exhibit 107, pp. 8, 10, 22.

The Howard Defendants also received "the payment of money or other valuable consideration" from "assisted person" Roberts. After Graeff terminated his representation of Roberts, Howard Law debited Roberts's bank account from about March 4, 2015 through July 7, 2015. The Howard Law monthly statements show that Roberts was charged a monthly fee of $50 for February through May 2015 (totaling $200 in monthly fees) and a fee of $85 to consult with an attorney. A total of $2,330 was deducted from Roberts's bank account by Graeff Law and Howard Law between August 2014 and June 2015.[8]   Howard Law prepared Roberts's

---

[8] It is unclear who retained the $641 balance of the $2,330 paid by Roberts following the $1,689 payment by Howard Law to Brann.

bankruptcy documents and invoiced Brann for those services and related costs and advertising.

Even when the Howard Defendants did not receive direct payments from assisted persons, they benefited from those payments and thus received other valuable consideration. The payments by assisted persons furthered the operation of the network and increased the likelihood of payments to the Howard Defendants pursuant to their agreements with Howard Network Attorneys.

C. **Civil penalties and an injunction should be imposed against the Howard Defendants for misrepresenting services to the Debtors – 11 U.S.C. §§ 526(a)(3), 526(c)(5)**

The Howard Defendants, through their own conduct and that of the Oregon Network Attorneys and Morgan Drexen, repeatedly violated 11 U.S.C. § 526(a)(3) by misrepresenting the services that they would perform. The Howard Defendants misrepresented the services they could provide to the Debtors and many Oregon residents by impliedly representing that they were authorized to provide services to Oregon residents.[9] In addition, in each of the Debtors' cases, the Howard Defendants violated 11 U.S.C. § 526(a)(3) in other respects.

The Howard Defendants misrepresented the services that they would provide to Stites by representing that Howard Nassiri/Howard Law would review and analyze relevant documents to determine Stites's legal rights and remedies pertaining to her unsecured debts. In fact, the Howard Defendants did not review and analyze Stites's legal rights and remedies or, by implication, provide her with competent legal advice about how to address her financial problems. Instead, Stites was automatically enrolled in a debt settlement program, did not talk to an attorney at all for over four years, and paid over $10,000 for services that primarily benefitted

---

[9] Howard Law is not and has not been registered to do business in Oregon as required by Oregon law. ORS §§ 58.045, 58.129 and 58.134. Moreover, Howard Law's multi-jurisdictional practice, fee sharing practices, and supervision of Morgan Drexen do not appear to comply with ethics requirements in Oregon and California. *See* Oregon Rules of Professional Conduct 5.5(c), 1.5(d), 5.3(b); California Rule of Professional Conduct 2-200, 1-300(A).

the Howard Defendants and Morgan Drexen.

The Howard Defendants misrepresented the services that they would perform for Arthur through the acts of Oregon Network Attorneys and Morgan Drexen by presenting her with standardized forms that expressly or impliedly represented that Graeff Law would prepare her bankruptcy documents after she completed paying all fees, that Graeff Law would take reasonable steps to keep her informed of the progress of her bankruptcy matter and respond to her inquiries, that the services related to the $50 per month fee were not or should not have been otherwise included in the flat fee of $2,169, and that the $50 monthly fee and $84 amendment fee were reasonable, necessary, and/or appropriate. In fact, bankruptcy documents were not completed when all payments were made, reasonable steps to keep Arthur informed of her bankruptcy case status were not contemplated or taken, and the various fees and expenses included the agreements presented to Arthur were inappropriate and unnecessary but were instead included in an effort to maximize the funds received by the network's enterprise.

The Howard Defendants misrepresented the services that they would perform for Roberts through their own acts and the acts of Oregon Network Attorneys and Morgan Drexen by, among other things, representing directly or by implication that the total fees and costs for bankruptcy representation was $1,295, that the LAP and Debt Settlement Agreements were necessary and appropriate to obtain bankruptcy services, that legal work under the Bankruptcy Agreement would commence promptly, and that Loy would provide bankruptcy services to Roberts. In fact, the charges to Roberts were much more than $1,295, the $50 per month fee was an effort to maximize the funds that could be extracted from Roberts, and neither Loy nor any other Oregon attorney provided bankruptcy representation to Loy for at least a six month period in 2015 during which Roberts, who was physically and financially vulnerable, struggled to determine what was happening with her case and money.

The Howard Defendants' misrepresentations were intentional and also are part of a clear and consistent pattern or practice of section 526 violations. Therefore, an injunction under 11

U.S.C. § 526(c)(5)(A) enjoining violations of section 526 and civil penalties under 11 U.S.C. § 526(c)(5)(B) are warranted.

### D. Civil penalties and an injunction should be imposed against the Howard Defendants for failing to perform services – 11 U.S.C. §§ 526(a)(1), 526(c)(5)

The Howard Defendants violated 11 U.S.C. § 526(a)(1) by failing to provide promised services to Stites, Arthur, and Roberts.

Stites initially wanted to address her debt without filing a bankruptcy case. The Howard Defendants said that they would review and analyze relevant documents to determine Stites's legal rights and remedies pertaining to her unsecured debts, including the Chase debt assigned to Palisades Collection, LLC for collection. Instead of performing an appropriate analysis, the Howard Defendants enrolled Stites in a costly debt settlement program and negotiated a settlement of the Chase debt that was not feasible and that ultimately resulted in Stites's bankruptcy filing.

Arthur just wanted to file a bankruptcy case. The Howard Defendants, through the acts of Oregon Network Attorneys and Morgan Drexen, failed to provide promised services by failing to timely complete Arthur's bankruptcy documents, keep her informed of the progress of her bankruptcy matter, and timely respond to her inquiries. Arthur paid $3,849 but ultimately had to engage another attorney to file her bankruptcy case,

Roberts too just wanted to file a bankruptcy case. But, as a result of the flawed network model, Roberts found herself without an attorney who could represent her in such a case for a prolonged period of time. The Howard Defendants, through their own acts and the acts of Oregon Network Attorneys and Morgan Drexen, failed to provide promised services to Roberts by failing to timely complete her bankruptcy documents and provide her with an Oregon attorney who could assist her with her bankruptcy matter, failing to keep her informed of the progress of her bankruptcy matter, and representing that Loy would provide her with bankruptcy services.

The Howard Defendants' failures to provide services were intentional and are part of a

clear and consistent pattern or practice of section 526 violations. Therefore, an injunction under 11 U.S.C. § 526(c)(5)(A) enjoining violations of section 526 and civil penalties under 11 U.S.C. § 526(c)(5)(B) are warranted.

### E. Civil penalties and an injunction should be imposed against the Howard Defendants for advising Roberts to make untrue and/or misleading statements – 11 U.S.C. §§ 526(a)(2), 526(c)(5).

The Howard Defendants violated 11 U.S.C. § 526(a)(2) by counseling or advising Roberts to make statements in the Statement of Financial Affairs ("SOFA") and Schedule B that they knew were untrue or misleading. Howard Law drafted Roberts' bankruptcy documents. Those documents, in SOFA item 9, stated that: (i) the debtor paid Brann in 2015 "$1,295.00 for bankruptcy representation" and "$355.00 for bankruptcy court filing fee;" and (ii) the debtor paid Start Fresh Today $39.00 in July 2015 for credit counseling and debtor education courses. The Howard Defendants knew that these statements weren't true and also knew, but failed to include in SOFA item 9, that Roberts paid at least $865 to Howard Law and $1,118 to Graeff Law within one year of the petition date. The Howard Defendants also failed to list as a potential claim on Schedule B the difference in the amount of fees Roberts paid to Howard Law and what Howard Law paid to Brann.

The Howard Defendants' actions were intentional and also are part of a clear and consistent pattern or practice of section 526 violations. Therefore, an injunction under 11 U.S.C. § 526(c)(5)(A) enjoining violations of section 526 and civil penalties under 11 U.S.C. § 526(c)(5)(B) are warranted.

### E. The Howard Defendants' agreement with Roberts should be cancelled and fees refunded pursuant to §329(b)

The Howard Defendants' fees paid within one year of the filing of Roberts's bankruptcy case should be determined to be unreasonable pursuant to 11 U.S.C. § 329(b), including any portion of fees received for limited scope services, and Howard Law's agreements with

Roberts, if any, should be cancelled because the fees exceeded the reasonable value of the services provided.

**F. The Howard Defendants should be required to refund fees due to their failure to file a statement of compensation in the Roberts case pursuant to 11 U.S.C. §§ 329(a), 105(a) and Fed. R. Bankr. P. 2016(b).**

The Howard Defendants violated 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b) in the Roberts case because they failed to file a statement of compensation paid or agreed to be paid for payments and/or agreements made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation or in connection with the case, and the source of such compensation. The Howard Defendants should be required to refund all fees received due to their violations of 11 U.S.C. § 329(a) and Fed. R. Bankr. P. 2016(b) pursuant to 11 U.S.C. § 105(a) and *Neben & Starrett Inc. v. Chartwell Fin. Corp.* (*In re Park-Helena Corp.*), 63 F.3d 877 (9th Cir. 1995).

## IV.  Conclusion

The Howard Defendants were central players in an elaborate and expansive network that victimized poor, desperate, and vulnerable consumers. The fee structure they used incentivized placing consumers in debt settlement plans for as long as possible and exposing them to lawsuits by creditors. Many of the fees and expenses charged were excessive, unnecessary, and/or inappropriate in light of the services provided. The Howard Defendants' conduct in these cases demonstrates that no obstacle, including the lack of a relationship with an attorney licensed in Oregon, was too large to stop them from debiting Oregon consumer accounts.

The Howard Defendants intentionally and repeatedly violated the Bankruptcy Code's debt relief agency provisions.  Moreover, the Howard Defendants have attempted to obfuscate their conduct by blaming others for actions for which they are responsible and failing to make disclosures required by bankruptcy law.  As requested in the complaints in these adversary proceedings, the Court should (1) enjoin the Howard Defendants from violating section 526, (2) impose civil penalties against the Howard Defendants in the amount of $5,000 per case for a

total of $15,000, (3) order the return of fees received in the Roberts case, (4) order the Howard

Defendants to pay Plaintiff's costs, and (5) take such additional action as the Court deems

necessary or appropriate.

DATED this 19th day of December, 2016.

Respectfully submitted,
GAIL BREHM GEIGER
Acting U.S. Trustee for Region 18


 /s/ Carla Gowen McClurg
Carla Gowen McClurg, OSB# 165144
Trial Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2016 I served a copy of the foregoing PLAINTIFF

UNITED STATES TRUSTEE'S TRIAL MEMORANDUM by mailing a copy of this document,

by United States first class mail, postage prepaid, addressed to the following:


Vincent Howard
2099 S State College Blvd #600
Anaheim, CA 92806

Howard Law, P.C.
Vincent Howard
2099 S State College Blvd #600
Anaheim, CA 92806

Jeffrey A. Katz
1919 N Heliotrope Dr
Santa Ana, CA 92706


                                    GAIL BREHM GEIGER
                                    Acting U.S. Trustee for Region 18


                                     /s/ Carla Gowen McClurg
                                    Carla Gowen McClurg, OSB# 165144
                                    Trial Attorney